<div style="writing-mode: vertical">Nabih H. Ayad & Associates P.C.
LAW OFFICES
2200 Canton Center Road, Suite 220
CANTON, MICHIGAN 48187
(734) 983-0500</div>

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**NASSER BEYDOUN,** individually, and on behalf of all similarly situated persons

      Plaintiff,

vs.

**ERIC H. HOLDER, JR.** in his official capacity as Attorney General of the United States of America; **JAMES B. COMEY,** in his official capacity as Director of the Federal Bureau of Investigation; and **CHRISTOPHER M. PIEHOTA**, in his official capacity as Director of the Terrorist Screening Center,

      Defendants.

Case No.:
Hon.

**PLAINTIFF'S CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

---

AYAD LAW, PLLC
NABIH H. AYAD (P59518)
Attorney for Plaintiff
2200 Canton Center Rd., Ste. 220
Canton, MI 48187
Phone: (734) 983-0500
Fax:   (734) 983-0520
Email: nayad@ayadlaw.com

---

## PLAINTIFF'S CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1 | Page

## **PRELIMINARY STATEMENT**

1. Free and unabridged access to commercial air travel is an integral component to a citizen's modern exercise of their fundamental right to movement and travel. The Terrorist Watch List, also known as the Terrorist Screening Database, or TSDB contains information that is used to prevent individuals from boarding a commercial flight that depart or arrives in the United States, and/or subjects individuals to additional screening and harassment at airports.

2. The Terrorist Screening Center's "Selectee List" and the "No Fly List" are subsets of the TSDB and represent the most visible and egregious impediments to this right to travel. Presently, the United States' system of screening prospective travelers through the Selectee List is clandestine; forestalling prospective travelers from obtaining any information about their inclusion on the list or providing any cognizable process for challenging the same.

3. The Plaintiff to this action is a United States citizen who was, and continues to be, selected for secondary and additional screening at different domestic airports in the United States, and subjected to unwarranted and excessive delays at airports. This screening is long and grueling, and poses a great burden on the Plaintiff, resulting in great delays in travel and rising to the level of harassment and profiling.

4. Plaintiff has made several attempts to board flights and to check into flights within the United States, but has been permitted to do so only after long, exhaustive screening, and secondary screenings, apparently due to the Transportation Security Administration's representation that he is on the Selectee List.

5. Plaintiff does not know why he is allegedly on the Selectee List and government officials have been unable or unwilling to explain why he is on the Selectee List, or further, how Plaintiff can be removed from the Selectee List.

6. Plaintiff has made numerous, albeit unsuccessful, attempts to receive additional information and remove himself from the Selectee List.

7. The government's inability or unwillingness to cooperate in any meaningful fashion has caused Plaintiff to file the present action seeking declaratory and injunctive relief. Namely, the removal of his name from the Watch List and the Selectee List or any other such list that would either prevent Plaintiff from boarding a commercial aircraft, or subject Plaintiff to additional screening, targeting, harassment, and scrutiny prior to boarding at airports.

NABIH H. AYAD & ASSOCIATES P.C.
LAW OFFICES
2200 Canton Center Road, Suite 220
CANTON, MICHIGAN 48187
(734) 983-0500

## PARTIES

8. Plaintiff Nasser Beydoun is a 49 year old resident of Dearborn, Michigan. He is a proud citizen of the United States and is pursuing the much sought after American dream.

9. Plaintiff Nasser Beydoun frequently needs to travel several times per month for work purposes.

10. Defendant Eric Holder, Jr. is the Attorney General of the United States of America and leads the Department of Justice (hereinafter "DOJ"), a department of the United States that oversees the Federal Bureau of Investigations (hereinafter "FBI"). Defendant Holder is sued in his official capacity.

11. The FBI maintains and oversees the Terrorist Screen Center (hereinafter "TSC").

12. The TSC develops and maintains the federal government's consolidated Terrorist Screening Database and the Selectee List.

13. Defendant James B. Comey is the Director of the FBI and he is sued in his official capacity.

14. Defendant Christopher M. Piehota is the Director of the Terrorist Screening Center and is sued in his official capacity.

## JURISDICTION AND VENUE

15. Plaintiff incorporates each and every allegation above as though fully plead herein.

16. This Verified Complaint against the Federal Bureau of Investigation, the Terrorist Screening Center, and the United States Department of Justice is to bring redress for a violation under the Fifth Amendment to the United States Constitution and the Administrative Procedures Act (hereinafter "APA").

17. Subject matter jurisdiction is established by and through 28 U.S.C § 1331 and 5 U.S.C § 702.

18. This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act found at 28 U.S.C § 2201 and § 2202.

19. The APA, 5 U.S.C § 706, vests this Honorable Court with the power to challenge and review agency actions that are unlawfully withheld or unreasonably delayed and to set aside the challenged agency action. Further authority for this action for injunctive relief is found in the Due Process Clause of the United States Constitution.

20. Venue is properly before this Court. Pursuant to 28 U.S.C § 1391(e) the above named Defendants are officers of agencies of the United States of America and are sued in their official capacities as such. Further, Plaintiff resides

within this district and a substantial part of the events, acts, and omissions giving rise to this action occurred within this district.

## STATEMENT OF FACTS

21. Plaintiff incorporates each and every allegation above as though fully plead herein.

22. Upon information and belief the Selectee List finds its beginnings with the "Terrorist Screening Center" (hereinafter "TSC") established in 2003 to consolidate the government's approach to identifying and tracking individuals suspected of terrorist activities and/or those individuals that are known associates of the same.

23. Upon information and belief, the TSC is managed by the FBI, which develops, maintains, and amends the consolidated Terrorist Screening Database (colloquially known as the "Terrorist Watch List").

24. The TSC shares information with other law enforcement agencies such as the Transportation Security Administration (hereinafter "TSA"), and U.S. Customs and Border Protection (hereinafter "CBP") for use in screening travelers entering the United States.

25. Upon information and belief, an individual can be nominated for inclusion on the Watch List including the No Fly List or the Selectee List by either the National Counterterrorism Center or the FBI.

26. Upon information and belief, following nomination by either the NCC or the FBI, the TSC determines whether or not the subject individual qualifies as a "known or suspected terrorist." Individuals determined to be known or suspected terrorists are placed on the Terrorist Watch List. It is presently unknown what standards are applied to placing an individual on the Selectee List.

27. Defendants have failed to provide a fair and transparent remedial mechanism that would allow affected individuals to challenge their inclusion on either the Selectee List or the Terrorist Watch List at large.

28. An individual aggrieved by their inclusion on the Selectee List or the No Fly List is afforded a single remedy – file a Traveler Redress Inquiry Program (TRIP) complaint with the Department of Homeland Security.

29. Upon information and belief, TRIP transfers the individual's complaint to the TSC, which in secret, determines whether any action should be taken. Upon information and belief, TSC provides no publicly available information about its decision-making process.

30. Upon information and belief, the TSC is the agency that determines the propriety of an individual's inclusion on the Selectee List. The TSC then informs DHS of its decision. DHS TRIP then responds to the individual with a vague and confusing letter that neither confirms nor denies the existence of any terrorist watch list records relating to the individual, nor does the letter provide a factual basis for the determination, or the criteria considered.

7 | Page

31. Plaintiff has made three such inquires with DHS, but the Defendants have failed to correct the matter. Plaintiff received the latest blanket generalized response to his TRIP complaint in late 2013.

32. Plaintiff has resided in or around the Metro-Detroit area since 1969.

33. Plaintiff is a successful entrepreneur and business owner and often needs to travel.

34. Plaintiff's restriction on travel including, excess delays, secondary screening, being singled out at check points, and being singled out for additional screening at the gate has impeded Plaintiff's business matters, and has humiliated Plaintiff.

35. Every time Plaintiff checks in at the airport he is subjected to secondary screening.

36. Plaintiff has missed countless flights because of delays caused by the extra, unwarranted scrutiny applied to Plaintiff.

## CLASS ACTION ALLEGATIONS

37. Plaintiff incorporates each and every allegation above as though fully plead herein.

38. Plaintiff brings this action on behalf of himself and all those similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

39. Countless individuals in the Metro-Detroit area have been affected by the Defendants' No Fly and Terrorist Watch List and have endlessly been wrongfully and unjustly harassed when trying to exercise their right to travel.

40. In fact, in a recently leaked government report, Dearborn, Michigan, a relatively small community outside of Detroit known to have the largest concentration of Arab-Americans in the county, was named as having the second highest concentration of suspected terrorists in the nation. Dearborn was only behind New York City, a city with a population over eighty times greater than Dearborn.

41. The class of individuals contains all those who are believed to be included on the No Fly and Terrorist Watch List, have been the victim of harassment and disparate treatment at airports when attempting to board their flights, and have not been given any legitimate means of redress.

42. The Class meets the requirements of Rule 23(a). Although the precise size of the class cannot be determined at this time, given the size of the Arab-American community in the Metro-Detroit Area and the fact that Dearborn, Michigan was recently named in a government document to possess the second highest concentration of suspected terrorists, the class is likely to be so numerous that joinder of all members is impracticable.

43. Questions of law and/or fact predominate among all members of the Class in that any legal and/or factual issues relating to the rights of Plaintiff as an individual will be equally applicable to any and all class members.

44. Plaintiff's claims are typical of the claims of the class because: (a) they are similarly situated as suspected persons included on the No Fly and Terrorist Watch lists, (b) have been similarly affected when attempting to exercise their right to travel by air, and (c) are all seeking relief for the violation of their due process and administrative rights.

45. Plaintiff will fairly and adequately represent the interests of all members of the proposed class because he seeks relief on behalf of the class as a whole and has no interests antagonistic to other members of the class. Plaintiff is represented by counsel with extensive expertise in class action litigation, including litigation regarding constitutional law and civil rights.

46. The maintenance of a class action is superior to other available methods of adjudication in promoting the convenient administration of justice because, inter alia:

(a) the prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront Defendant with incompatible standards of conduct;

(b)	in view of the complexity of the issues and the expense of litigation, the separate claims of individual class members are insufficient in amount to support separate actions;

(c)	it is probable that the amount which may be recovered by individual class members will be able enough in relation to the expense and effort of administering the action to justify a class action;

(d)	individual class members do not have a significant interest in controlling the prosecution or defense of separate actions;

(e)	the action will be manageable as a class action;

(f)	the prosecution of separate actions would create a risk of adjunctions with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interest.

## FIRST CLAIM FOR RELIEF
## FAILURE TO PROVIDE POST-DEPRIVATION NOTICE AND HEARING
*Violation of the Fifth Amendment Due Process Clause of the United States Constitution*

47.	Plaintiff incorporates each and every allegation above as though fully plead herein.

48.	Plaintiff has a constitutionally protected liberty interest in traveling free from unreasonable burdens within, to, or from the United States of America.

49. Further, Plaintiff has the right to his reputation and to be free from the false allegation that he is a terrorist or that he is associated with terrorist activities when such harm arises in conjunction with the deprivation of his constitutionally protected right to travel pursuant to the Fifth Amendment Due Process Clause.

50. Plaintiff has a liberty interest in not being singled out for punishment without trial or without due process of law. Defendants' actions have singled out Plaintiff for such punishment, by way of example, by placing unwarranted and unjust additional screening and scrutiny on Plaintiff when attempting to fly through United States airspace, which has the effect of restricting Plaintiff's ability to fly.

51. Plaintiff is entitled to a legal system that affords him post-deprivation notice and an opportunity to contest the deprivation of his right to travel free from unwarranted scrutiny.

52. The DHS TRIP process presently provides no meaningful opportunity for Plaintiff to provide exculpatory evidence in an effort to be taken off the No-Fly or Terrorist Watch Lists.

53. Defendants have violated Plaintiff's rights without affording him due process of law and will continue to do so into the future so long as Plaintiff intends upon traveling anywhere.

**SECOND CLAIM FOR RELIEF**
**UNLAWFUL AGENCY ACTION**
*U.S.C. § 706*

54. Plaintiff incorporates each and every allegation above as though fully plead herein.

55. Defendants' actions as described herein were arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity, and should be adjudicated as unlawful and set aside as such pursuant to 5 U.S.C. §§ 706(2)(A) and (2)(B).

56. Congress has instructed that procedures be established to "enable airline passengers who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might post a security threat, to appeal such determination and correct information contained in the system. 49 U.S.C. § 44903(J)(2)(C)(iii)(I).

57. Further, Congress instructed the Executive to "establish a timely and fair process for individuals identified as a threat . . . to appeal to the [TSA] the determination and correct any erroneous information." 49 U.S.C. § 44903(J)(2)(G)(i).

58. The DHS TRIP process does not provide a meaningful mechanism for travelers who have been denied boarding or subjected to unwarranted additional screenings to correct erroneous information in the government's

**13 |** P a g e

terrorism databases as the travelers are not given any indication of the information that may be in the record.

59. As a result, the DHS TRIP system fails to consider an important aspect of Congress's instructions and violates § 706(2)(A) of the APA.

60. Further, for the reasons cited in Plaintiff's First Claim of Relief, the DHS TRIP process violates § 706(2)(B) of the APA as it violates Plaintiff's procedural due-process rights.

61. Defendants' failure to provide Plaintiff with a constitutionally adequate remedy that affords, at a minimum, notice and an opportunity to contest his placement on the selectee list after being targeted and harassed at the airport is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity, and should be set aside as unlawful pursuant to 5 U.S.C. § 706

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter an Order:

A. Declaring that Defendants' policies, practices, and customs violate the Fifth Amendment of the United States Constitution and the Administrative Procedure Act;

B. Enjoining Defendants and requiring them to remedy the constitutional and statutory violations by removing Plaintiff from the Selectee List or any other list that prevents Plaintiff from exercising his constitutionally guaranteed right to travel;

C. Enjoining Defendants and requiring them to provide a valid legal mechanism that affords notice of the factual basis for the placement of individuals on the Selectee List and a meaningful opportunity to contest their inclusion on said list;

D. Certify the case as described herein;

E. Award attorney's fees, costs, and expenses of all litigation pursuant to 28 U.S.C. § 2412; and

F. Enter any and all other relief as this Court deems just and equitable.

                                        Respectfully Submitted,

                                        AYAD LAW, PLLC.

                                        /s/ Nabih H. Ayad

                                        _____
Nabih H. Ayad (P59518)
Attorney for Plaintiff
2200 Canton Center Road, Suite 220
Canton, MI 48187
Phone: (734) 983-0500
Fax:   (734) 983-0520

Dated: October 3, 2014

NABIH H. AYAD & ASSOCIATES P.C.
LAW OFFICES
2200 Canton Center Road, Suite 220
CANTON, MICHIGAN 48187
(734) 983-0500