UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Nasser Beydoun,

    Plaintiff,   Case No. 14-cv-13812

v.          Judith E. Levy
          United States District Judge
Loretta Lynch, Christopher M.
Piehota, and James B. Comey,

    Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [15]**

  Nasser Beydoun brought suit against Loretta E. Lynch, Attorney General of the United States, Christopher M. Piehota, Director of the Terrorist Screening Center, and James B. Comey, Director of the FBI, alleging that the redress process by which he may challenge his purported placement on the Selectee List, a subset of the Terrorist Screening Database, violates the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. Defendants filed a motion to dismiss on January 19, 2016, and a hearing was held on June 21, 2016. For the reasons set forth below, plaintiff's complaint is

dismissed for failure to name a necessary party, and plaintiff's oral motion for leave to amend is denied as futile.

## I. Background

### *a. Overview of the Selectee List and redress procedures*

Both the No-Fly List and the Selectee List are subsets of the Terrorist Screening Database, which is maintained by the Terrorist Screening Center ("TSC"), an agency overseen by the FBI. (Dkt. 15 at 15, 17-19.) "The [Terrorist Screening Database] is a consolidated database containing identifying information of persons about whom there is a reasonable suspicion that they are known or suspected terrorists." (*Id.* at 18; *see* Dkt. 1 at 2, 7.) Individuals on the No-Fly List are not permitted to fly, while those on the Selectee List are subject to "enhanced screening," after which they may board a commercial flight and travel by air. (Dkt. 15 at 19-20.)

The Transportation Security Administration is responsible for implementing the No-Fly and Selectee Lists and must "perform[] . . . the passenger prescreening function of comparing passenger information to the automatic [S]electee and [N]o[-F]ly [L]ists and utilize all appropriate records in the consolidated and integrated terrorist watch

list maintained by the [TSC] in performing that function." (*Id.* at 19 (quoting 49 U.S.C. § 44903(j)(2)(C)(ii)).)

Individuals who wish to challenge their suspected inclusion on the Selectee or No-Fly List may seek redress through the Department of Homeland Security's Redress Inquiry Program ("DHS TRIP"). (Dkt. 15 at 15 (citing 49 C.F.R. §§ 1560.201–.207); *see* Dkt. 23 at 18.) After a redress inquiry form is submitted, the "TSA, in coordination with the TSC and other appropriate Federal law enforcement or intelligence agencies, if necessary, will review all the documentation and information requested from the individual, correct any erroneous information, and provide the individual with a timely written response." (Dkt. 15 at 21 (quoting 49 C.F.R. § 1560.205(d)).) These written responses vary in content, "but generally state whether corrections have been made as a result of the redress inquiry and DHS TRIP's review." (*Id.* at 21-22 (citing Dkt. 6-3).)

### b. *Plaintiff's allegations*

Plaintiff Nasser Beydoun is an American citizen and resident of the state of Michigan, who "frequently needs to travel several times per month for work purposes." (Dkt. 1 at 3-4.) During these travels,

plaintiff has been "selected for secondary and additional screening at different domestic airports" and "subjected to unwarranted and excessive delays." (*Id.* at 2.) The restrictions placed on plaintiff's travel include "excess delays, secondary screening, being singled out at check points, and being singled out for additional screening at the gate," all of which have "impeded Plaintiff's business matters, . . . humiliated Plaintiff," and caused plaintiff to miss "countless flights." (*Id.* at 8.) These delays and restrictions on plaintiff's travel are "apparently due to the [TSA]'s representation that he is on the Selectee List." (*Id.* at 3.)

Plaintiff brings two claims against Loretta E. Lynch, Christopher M. Piehota, and James B. Comey, in their official capacities. (*See id.* at 4.)[1] Plaintiff also purports to represent a class of "all those who are believed to be included on the No[-]Fly and Terrorist Watch List, have been the victim of harassment and disparate treatment at airports when attempting to board their flights, and have not been given any legitimate means of redress." (*Id.* at 9-11.)

---

[1] Former Attorney General of the United States Eric H. Holder, Jr., was named in the complaint, but current Attorney General of the United States Loretta E. Lynch has been substituted as the proper party pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

4

Plaintiff first claims that his inclusion on the Selectee List violates the Due Process Clause of the Fifth Amendment of the United States Constitution. (*See id.* at 11-12.) Plaintiff alleges that he has been deprived of his due process interests "in traveling free from unreasonable burdens within, to, or from the United States of America," "to be free from the false allegation that he is a terrorist or that he is associated with terrorist activities," and in "not being singled out for punishment," all without adequate post-deprivation process. (*Id.*) According to plaintiff, the DHS TRIP process lacks sufficient "post-deprivation notice and an opportunity to contest the deprivation of his right[s]," because it "presently provides no meaningful opportunity for Plaintiff to provide exculpatory evidence in an effort to be taken off the No-Fly or Terrorist Watch Lists."[2] (*Id.*)

Plaintiff next claims that defendants' actions violate Sections 706(2)(A) and (2)(B) of the Administrative Procedure Act ("APA"). (Dkt. 1 at 13-14 (citing 5 U.S.C. §§ 706(2)(A)–(2)(B).) Plaintiff alleges that

---

[2] Plaintiff says he can still fly, so he cannot be on the No-Fly List. If plaintiff intends this allegation to be on behalf of purported class members who are on the No-Fly List, the Court notes that plaintiff would be an inadequate class representative. Because plaintiff otherwise refers to his placement on the Selectee List throughout his complaint and response, the Court interprets plaintiff's allegation here to mean that there is "no meaningful opportunity for Plaintiff to provide exculpatory evidence in an effort to be taken off the [Selectee]" List.

because defendants failed to provide him, "at a minimum, notice and opportunity to contest his placement on the [S]electee [L]ist after being targeted and harassed at the airport," defendants' actions were "arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, and contrary to constitutional rights, power, privilege, or immunity, and should set aside as unlawful." (*Id.*)

At the hearing, the Court noted that defendants had argued that plaintiff's constitutional and APA claims were "coextensive," and asked plaintiff's counsel, "is your APA claim limited to stating that the administrative decision violated the Constitution?" Plaintiff's counsel responded: "Yes, your Honor. In a nutshell, yes."

**II. Standard**

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.,* 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A

plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### III. Analysis

Plaintiff failed to name the TSA as a defendant, a necessary party when challenging the DHS TRIP redress process, so his due process and APA claims must be dismissed. At the hearing, plaintiff's counsel asked that plaintiff be granted leave to amend the complaint if the Court were inclined to dismiss the case, so that plaintiff could directly challenge his placement on the Selectee List. Because plaintiff fails to establish that his purported placement on the list deprives him of a constitutionally protected life, liberty, or property interest, leave to amend is denied.

### *a. Plaintiff failed to name the TSA, a necessary party, as a defendant*

As alleged, plaintiff brings due process and APA challenges to the DHS TRIP redress procedures, not his placement on the Selectee List. According to the Sixth Circuit in *Mokdad v. Lynch*, a challenge to the DHS TRIP redress process is a challenge to a TSA order. *Mokdad v. Lynch*, 804 F.3d 807, 811 (6th Cir. 2015) ("To the extent that [plaintiff]

challenges the adequacy of the redress process, his claims amount to a challenge to a TSA order. Congress has specifically directed DHS and TSA—not TSC—to establish a redress process for travelers who believe they have been wrongly included on the No[-]Fly List.") (quoting 49 U.S.C. §§ 44926(a), 44903(j)(2)(C)(iii)(I), (G)(i)). Plaintiff failed to name the TSA as a defendant, a necessary party to challenge a TSA order, so his claims must be dismissed. *See id.* at 812 ("TSA is, therefore, a required party to [plaintiff]'s litigation about the adequacy of the redress procedures. . . . We dismiss without prejudice [plaintiff]'s claims challenging the adequacy of the redress process.").

Plaintiff argues that he is "not challenging the TRIP determination letter or the letter issued by the TSA, but instead, the determination of the DHS via the TRIP letter [and] . . . his apparent placement on the Selectee List itself." (Dkt. 23 at 17.) Essentially, plaintiff argues that he is directly challenging his placement on the Selectee List, which would only implicate the TSC, not the TSA. *See Mokdad*, 804 F.3d at 811 (noting that the "TSC determines '. . . whether the status should be changed[, ]for example, No Fly to Selectee[]'"). Defendants reply that plaintiff "restyles his claims altogether, now

8

alleging that the lawsuit only intends to challenge 'his apparent placement on the Selectee List itself.'"³ (Dkt. 25 at 8.)

On the face of the complaint, plaintiff does not directly challenge his placement on the Selectee List. Plaintiff alleges in his due process claim that he "is entitled to a legal system that affords him post-deprivation notice and an opportunity to contest the deprivations of his rights," and "[t]he DHS TRIP process presently presents no meaningful opportunity for Plaintiff to provide exculpatory evidence in an effort to be taken off the [Selectee] or Terrorist Watch Lists." Plaintiff's due process claim explicitly concerns the alleged lack of notice and hearing, and is thus a challenge to the DHS TRIP redress procedures.

And plaintiff alleges in his APA claim that the "DHS TRIP process does not provide a meaningful mechanism for travelers who have been denied boarding or subjected to unwarranted additional screenings to correct erroneous information in the government's terrorism databases," and "fails to consider an important aspect of Congress's instructions and violates § 706(2)(A) of the APA." (Dkt. 1 at 13-14.) According to plaintiff, "Defendants' failure to provide Plaintiff with a constitutionally

---

³ Defendants neither admit nor deny that plaintiff is on the Selectee List.

9

adequate *remedy* that affords, at a minimum, notice and an opportunity to contest his placement on the selectee list" violates the APA. (*See* Dkt. 1 at 14 (emphasis added).) As with plaintiff's due process claim, his APA claim is a challenge to the DHS TRIP redress process.

Even plaintiff's requested relief involves the DHS TRIP redress procedure. Plaintiff requests that the Court "[e]njoin[] Defendants and requir[e] them to provide a valid legal mechanism that affords notice of the factual basis for the placement of individuals on the Selectee List and a meaningful opportunity to contest their inclusion onto said list." (Dkt. 1 at 15.) Put differently, plaintiff seeks a new redress process. Plaintiff's due process and APA claims are thus dismissed for failure to name a necessary party, the TSA. *See Mokdad*, 804 F.3d at 812.

### b. Leave to amend is denied as futile

At the hearing on this motion, plaintiff's counsel made an oral motion for leave to amend his complaint if the Court were in any way inclined to grant defendants' motion to dismiss. Because amending the complaint as requested would be futile, plaintiff's oral motion is denied.

The Court specifically noted at the hearing that plaintiff had not sought "to amend to include TSA as a defendant." Plaintiff's counsel

responded: "We don't want to include TSA, your Honor." In *Mokdad*, the Sixth Circuit "dismiss[ed] without prejudice [plaintiff]'s claims challenging the adequacy of the redress process" because the plaintiff "failed to join TSA as a defendant." *Id.* at 812. Here, plaintiff would not join the TSA as a defendant if leave to amend were granted, so granting plaintiff leave to amend his claims challenging the adequacy of the DHS TRIP redress process would be futile.

Plaintiff amending his complaint to directly challenge his placement on the Selectee List would also be futile. Plaintiff's requested amendment would fail to establish that his placement on the list violates a life, liberty, or property interest protected by the Due Process Clause, and thus would not state a claim.

To establish a procedural due process violation under 42 U.S.C. § 1983, plaintiff must show: (1) that he had a protected life, liberty, or property interest; (2) that the federal government deprived him of that protected interest; and (3) "that the state did not afford [him] adequate procedural rights before depriving [him] of [his] protected interest." *Wedgewood L.P. I v. Twp. of Liberty*, 610 F.3d 340, 349 (6th Cir. 2010). Plaintiff argues that he was deprived of his right to "travel[] free from

unreasonable burdens within, to, or from the United States of America," his "right to his reputation and to be free from the false allegation that he is a terrorist or . . . associated with terrorist activities," and his "liberty interest in not being singled out for punishment without trial or without due process of law." (Dkt. 1 at 11-12; *see* Dkt. 23 at 20-33.)

First, under existing case law, plaintiff fails to sufficiently allege that he was deprived of his right to travel. Government action implicates the right to travel under the Due Process Clause when it "actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *Attorney Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (internal quotations and citations omitted). "[T]ravelers do not have a constitutional right to the most convenient form of travel[, and] minor restrictions on travel simply do not amount to the denial of a fundamental right." *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 54 (2d Cir. 2007); *see Gilmore v. Gonzales*, 435 F.3d 1125, 1136 (9th Cir. 2006) ("[T]he Constitution does not guarantee the right to travel by any particular form of transportation."); *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) ("Minor restrictions on travel

simply do not amount to the denial of a fundamental right that can be upheld only if the Government has a compelling justification.").

Thus a law that has an "incidental or negligible" burden on the right to travel does not rise to the level of a due process violation, because such a burden could "hardly be said to deter or penalize travel." *See, e.g.*, *LULAC v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007) ("The state's denial of state-issued photograph identification to temporary resident aliens may arguably result in inconvenience, requiring the bearer of a certificate for driving to carry other personal identification papers, but this inconvenience can hardly be said to deter or penalize travel. To the extent this inconvenience burdens exercise of the right to travel at all, the burden is incidental and negligible, insufficient to implicate denial of the right to travel.").

Plaintiff argues that "the burdens imposed by the restrictions placed on Plaintiff by virtue of being placed on the Selectee List are far greater than any of the burdens imposed by the restrictions placed on the plaintiffs" in those cases. (Dkt. 23 at 14 (citing *Latif v. Holder*, 28 F. Supp. 3d 1134 (D. Or. 2014)).) Plaintiff cites *Latif v. Holder*, in which the district court "conclude[d] . . . that [p]laintiffs have constitutionally-

13

protected liberty interests in traveling internationally by air, which are significantly affected by being placed on the No[-]Fly List," because placement on the No-Fly List resulted in the plaintiffs being "denied boarding on flights over United States airspace." *See Latif*, 28 F. Supp. 3d at 1143, 1149.

But here, plaintiff does not allege that he has been denied boarding because of his purported inclusion on the Selectee List. Nor does he allege that enhanced screening has deterred him from flying. Rather, plaintiff alleges that he has suffered "excess delays, secondary screening, being singled out at check points, and being singled out for additional screening at the gate." According to plaintiff, he has still "been permitted to [board flights]." (Dkt. 1 at 3.)

At the hearing, plaintiff's counsel argued that these incidents of additional screening and questioning unfairly harassed and humiliated his client, because he should never have been on the Selectee List. The Court fully acknowledges this harm. However, plaintiff's allegations do not rise to the level of a due process violation, because he alleges that he can still fly after additional screening and has not been deterred from flying.

14

Second, plaintiff fails to sufficiently allege that his placement on the Selectee List has caused him reputational harm that rises to the level of a constitutional violation. For a reputational harm to infringe on a protected liberty interest, plaintiff must meet the "stigma-plus" test, that is, plaintiff must demonstrate that the government's action "damaged his . . . reputation (the stigma) and that it 'deprived [him] of a right previously held under [the] law' (the plus)." *See Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (quoting *Paul v. Davis*, 424 U.S. 693, 708 (1976)).

Assuming that plaintiff sufficiently alleges the stigma element, he fails to sufficiently allege that he was deprived of a right previously held under the law. To satisfy this part of the test, plaintiff must allege that he "legally could not do something that []he could otherwise do." *See Miller v. California*, 355 F.3d 1172, 1179 (9th Cir. 2004); *Latif*, 28 F. Supp. 3d at 1150 (inclusion on the No-Fly List sufficient under the plus prong because plaintiffs could no longer fly). Here, plaintiff says that he can still fly, albeit after enhanced screening. He thus fails to allege that he was deprived of a right he previously held.

15

Third, plaintiff fails to sufficiently allege that his purported placement on the Selectee List singles him out for punishment without trial or due process in violation of the Due Process Clause. Courts first look to legislative intent to determine whether a "restriction on liberty constitutes impermissible punishment or permissible regulation." *United States v. Salerno*, 481 U.S. 739, 747 (1987). "Unless Congress expressly intended to impose punitive restrictions, the punitive/regulatory distinction turns on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (quoting *Schall v. Martin*, 467 U.S. 253, 269 (1984)) (alterations in original).

Plaintiff alleges that "Defendants' actions have singled out Plaintiff for punishment . . . by placing unwarranted and unjust additional screening and scrutiny on Plaintiff when attempting to fly." (Dkt. 1 at 12.) But Congress charged the TSA with managing the day-to-day security functions of air transportation for the purpose of preventing terrorist attacks, and granted the TSA authority to "issue . . . such regulations as are necessary to carry out [its] functions." 49

U.S.C. § 114(l)(1). "There is no doubt that preventing danger to the community is a legitimate regulatory goal." *Salerno*, 481 U.S. at 747. And regulations that provide for additional security screening at airports under certain circumstances are rationally related to the goal of preventing danger to the community. In this case, plaintiff does not sufficiently allege that the additional screening would be "excessive in relation to" that general goal.

Even if plaintiff were granted leave to amend his complaint to directly challenge his placement on the Selectee List, he fails to plead the deprivation of a constitutionally protected life, liberty, or property interest. Plaintiff's APA claim would similarly fail, because Plaintiff's counsel stated at the hearing that the APA claim is based solely on the alleged constitutional violation. Leave to amend plaintiff's complaint would be futile, and his oral motion is denied.

## IV. Conclusion

For the reasons set forth above, defendants' motion to dismiss (Dkt. 15) is GRANTED. Plaintiff's oral motion for leave to amend is DENIED.

IT IS SO ORDERED.

| | |
|---|---|
| Dated: July 14, 2016<br>Ann Arbor, Michigan | s/Judith E. Levy<br>JUDITH E. LEVY<br>United States District Judge |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 14, 2016.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager
